UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LANA PATRICK,

    Plaintiff,

v.                                  Case No. 3:24-cv-197-WWB-MCR

LIEUTENANT MAERTZ,
JOHN/JANE DOE,
CLAY COUNTY UTILITY AUTHORITY,

    Defendants.
_____/

## DEFENDANT, LIEUTENANT MAERTZ' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant, Lieutenant Maertz, in her individual capacity, by and through the undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6) requests this Court dismiss Plaintiff's complaint and as grounds therefore states as follows:

### Grounds for Motion

1. Plaintiff's complaint fails to state a claim for relief.

2. Plaintiff has pleaded as a co-defendant a fictional character, a John/Jane Doe, which is not permitted.

3. Lieutenant Maertz is entitled to qualified immunity as it is not clearly established that a member of the public may film the interior and exterior of a government building whenever they want to.

**Memorandum of Law**

I. **Standard of Review**

A Rule 12(b)(6) motion to dismiss questions the legal sufficiency of a complaint. In assessing the merits of a Rule 12(b)(6) motion, the court must assume all the factual allegations set forth in the complaint are true. *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). In evaluating the sufficiency of a complaint, the court must accept "well pleaded facts as true and resolve them in the light most favorable to the plaintiff." *Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998) However, if the plaintiff can prove no set of facts that would entitle him to relief, then the defendant is entitled to a dismissal for failure to state a claim. Although the plaintiff is not held to a very high standard on a Rule 12(b)(6) motion, the plaintiff is still required to "allege some specific factual basis for those conclusions or face dismissal" of the claim. *Jackson v. Bellsouth*, 372 F.3d 1250, 1263 (11th Cir. 2004). "The tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Additionally, in a case such as this one, where the Plaintiff has attached factual evidence (attached herein as Exhibit 1), a Court is allowed to take into account such evidence while considering a motion to dismiss. The Plaintiff has attached to her complaint a lengthy, approximately thirty minute video documenting her strange foray around the Clay County Utility Authority's offices, sticking her phone up to windows around the building filming employees.[1] The Court should consider this evidence when evaluating this motion.

In deciding whether a complaint states a claim upon which relief may be granted, Courts normally consider all documents that are attached to the complaint or incorporated into it by reference. The Civil Rules provide that an attachment to a complaint generally becomes "part of the pleading for all purposes," Fed. R. Civ. P. 10(c), including for ruling on a motion to dismiss. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (stating that a "court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss . . . ."); *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) ("[D]ocuments attached to a complaint or incorporated in the complaint by reference can

---

[1] At the time of filing this motion, there does not appear to be a document number attached to Plaintiff's exhibit, so the video will be provided to the Court and referenced as Exhibit 1.

generally be considered by a federal court in ruling on a motion to dismiss under Rule 12(b)(6)."); *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007) ("We are required to accept the facts as set forth in the plaintiff's complaint as true, and our consideration is limited to those facts contained in the pleadings and attached exhibits."). As the Eleventh Circuit's predecessor warned, a "litigant may be defeated by his own evidence, the pleader by his own exhibits" when "he has pleaded too much and has refuted his own allegations by setting forth the evidence relied on to sustain them." *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940).

## II. Plaintiff's Complaint Fails to State a Proper Claim for Relief

To state a First Amendment retaliation claim, "a plaintiff must demonstrate that (1) she engaged in protected speech; (2) the defendant's conduct adversely affected the protected speech; and (3) a causal connection exists between the speech and the defendant's retaliatory actions." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016). However, intertwined within both of Plaintiff's Counts are a fictional person – a John/Jane Doe. The Plaintiff does not specify which action each person undertook to allegedly violate her rights. Additionally, there is no fictitious party practice in federal court. *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). The Plaintiff simply lumps together both parties and does not separate the actions of either.

4

There is also no meaningful distinction between the Plaintiff's claims. Both Counts allege First Amendment retaliation but no explain the difference between each claim. Count I merely states the Plaintiff was trespassed but does not state what the First Amendment conduct was that led to an alleged retaliation. Count II simple claims that it was due to her exercising her right to "free press." Defendant is at a loss as to how to respond to each claim without further detail.

### III. Lieutenant Maertz is Entitled to Qualified Immunity

#### a. *Qualified Immunity Standard*

Most importantly, Lieutenant Maertz is entitled to qualified immunity. The Supreme Court "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232, (2009) (*quoting Hunter v. Bryant*, 502 U.S. 224, 227, (1991) (per curiam)). "Although 'the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be raised and considered on a motion to dismiss.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson*, 555 U.S. at 231 (*quoting Harlow v. Fitzgerald*, 457 U.S. 800,

5

818, (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (internal quotation marks and citation omitted).

"In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Carruth v. Bentley*, 942 F.3d 1047, 1054 (11th Cir. 2019) (internal quotation marks and citation omitted). Essentially, this boils down to "whether the actions are of a type that fell within the employee's job responsibilities." *Id.* (internal quotation marks and citation omitted). There are two parts to this inquiry: whether the defendant "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id.* (citation omitted). Lieutenant Maertz was indisputably operating in her discretionary capacity. Investigating crimes, conducting searches, and making arrests are legitimate job-related functions within the discretionary authority of police officers. *Nigro v. Carrasquillo*, 152 F. Supp. 3d 1364, 1368 (S.D. Fla. 2015), *aff'd*, 663 F. App'x 894 (11th Cir. 2016). Once

6

an officer has met that burden, the burden then shifts to the Plaintiff to show 1) that the conduct violated a constitutional right and 2) the right was clearly established. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

"In the past, courts considered those prongs in order. *Corbitt*, 929 F.3d at 1311. Now, courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

### b. *Plaintiff cannot Show a Violation of a Clearly Established Right*

"The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000). The First Amendment right to record police activity in public is probably clearly established. *E.g., Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); *Metz v. Hines*, 2019 U.S. Dist. LEXIS 212180 *7 (M.D. Fla. Dec. 9, 2019). Yet the right to record within a government building or nonpolice public employees working inside a government building is another matter. In a recent, similar cases, neither the parties nor the Court could find any controlling law on that point. *Sheets v. City of Punta Gorda*, No. 2:19-cv-484-FtM-38MRM, 415 F. Supp. 3d 1115, 2019 U.S. Dist. LEXIS 203694, 2019 WL 6251361 (M.D. Fla. Nov. 23, 2019); *Metz v. Hines*, 2019

U.S. Dist. LEXIS 212180 (M.D. Fla. Dec. 9, 2019); *Watkins v. Good*, 2024 U.S. Dist. LEXIS 40407 (S.D. Fla. March 7, 2024).[2] If a courtroom full of lawyers cannot find the contours of this purported right unsettled after exhaustive research and argument, the Court should not hold Maertz to a higher standard. *See Coffin*, 642 F.3d at 1015 ("[I]t would be inappropriate to hold government officials to a higher level of knowledge and understanding of the legal landscape than that displayed by judges whose everyday business it is to decipher the meaning of judicial opinions."

In *Metz v. Hines*, 2019 U.S. Dist. LEXIS 212180 *1 (M.D. Fla. Dec. 9, 2019), a case analogous to the instant matter, Metz went to the County Administration Building to investigate a "no recording" sign. Once inside, a County employee approached Metz and told him to leave. *Id*. At some point, the police arrived, where Hines, the County employee, told the police that Metz "should be punched in the throat." *Id*.

However, based on these simple facts, the District Court found that qualified immunity was appropriate on a motion to dismiss for Hines. *Id*. at 7. Metz simply could not show a violation of a clearly established right under the

---

[2] Both *Metz v. Hines*, 2019 U.S. Dist. LEXIS 212180 (M.D. Fla. Dec. 9, 2019) and *Watkins v. Good*, 2024 U.S. Dist. LEXIS 40407 (S.D. Fla. March 7, 2024) granted qualified immunity at the motion to dismiss stage under nearly identical circumstances as the instant case.

First Amendment. *Id*. There was no clear doctrine on whether the public could film inside a government building. *Id*.

    c. <u>*Public Forum Analysis*</u>

Plaintiff has no unlimited right to film on government property. Like all First Amendment protections, the right to film is "subject to reasonable time, manner and place restrictions." *Smith v. City of Cumming,* 212 F.3d at 1333. "It is by now clear that the First Amendment does not guarantee access to property just because it is owned by the government." *Bloedorn v. Grube*, 631 F.3d 1218, 1230 (11th Cir. 2011). Instead, "courts use 'forum analysis to evaluate government restrictions on purely private speech that occurs on government property.'" *Keister v. Bell*, 879 F.3d 1282, 1288 (11th Cir. 2018) (*quoting Walker v. Tex. Div. Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2250, (2015)). There are several different forums. *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of Law v. Martinez*, 561 U.S. 661, 679 & n.11 (2010). One type is a limited public forum. *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469-70, (2009). Because the government chooses how wide to swing open the gate of a limited public forum, it may allow access only to certain speakers based on their identity. *Id.* (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 49, (1983)). So "a speaker may be excluded . . . 'if he is not a member of the class of speakers for whose especial benefit the forum was created.'" *Id.* (quoting *Cornelius*, 473 U.S. at 806).

"This distinction matters because the type of forum determines the level of scrutiny applied." *Keister*, 879 F.3d at 1288. A limited public forum "exists where a government has reserved [it] for certain groups or for the discussion of certain topics." *Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1224 (11th Cir. 2017) (alteration accepted) (*quoting Confederate Veterans*, 135 S. Ct. at 2250). So a limited public forum is not "open to the public at large for discussion of any and all topics." *Id*. And it "can be set up to grant only 'selective access' to [the] class" for which it is reserved. *Id*. (*quoting Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 679-80, (1998)).

From the face of the video, is clear that Plaintiff's attempt to film the Clay County Utilities building revealed that it is not an open public forum. There was no board meeting taking place. Several doors that the Plaintiff attempted to film through were clearly marked for authorized personnel only. The purpose of the building was for the business of utilities payment and questions. There is no stage or public soap box for the public to enter and give stump speeches. There is no indicia from the video that the utilities building was open for the public to use in any way the public sees fit. It should not be a leap of logic to conclude that the Clay County Utilities building was not designed for the public to traipse about it for any purpose. It is at best a limited public forum, and thus subject to a standard lower than strict scrutiny.

The law is not as clear as the Plaintiff would assert as she did in her interaction with Lt. Maertz that all government owned buildings are public and available to the public for their personal curiosity and filming purposes. "The Government, like any private landowner, may preserve the property under its control for the use to which it is lawfully dedicated." *Sentinel Communications Co. v. Watts*, 936 F.2d 1189, 1201 (11th Cir. 1991) (internal quotation marks and citation omitted). Avoiding designated walkways, walking through grass and bushes, and approaching windows to film employees is not the purpose of this limited public forum.

The Supreme Court has concluded the same in similar circumstances. For example, in *United States v. Kokinda*, 497 U.S. 720, 727-80 (1990), the Supreme Court found that a sidewalk from the parking lot to the door of a post office was not a traditional public forum because it "was constructed solely to assist postal patrons to negotiate the space between the parking lot and the front door of the post office, not to facilitate the daily commerce and life of the neighborhood or city." Additionally, in *Watkins v. U.S. Postal Emp.*, 611 F. App'x 549, 552 (11th Cir. 2015), the Eleventh Circuit found that the inside of a post office is not a traditional public forum and that asking the Plaintiff to leave because he refused to stop singing was reasonable under the circumstances. Similar to these cases, this Court should find that the Utilities building was not open for any purpose.

### d. *Plaintiff's Filming Led to Disruptions*

Likewise, a government "workplace, like any place of employment, exists to accomplish the business of the employer." *Cornelius*, 473 U.S at 805. "It follows that the Government has the right to exercise control over access to the [government] workplace in order to avoid interruptions to the performance of the duties of its employees." *Id.* at 805-06. Notably, the Plaintiff's video shows that she did not remain in one spot while filming. The video begins with the Plaintiff entering the building, filming her interaction at the front desk, and then making her way up and down the hallways before making her way outside the building, and traversing the grass, bushes, and landscaping to approach every exterior window, sticking her phone against it, and filming the activities of the employees inside. This led to several employees stopping their work and confronting the Plaintiff asking what she was doing and why she was doing it. The Plaintiff's conduct led to an immediate interference with the government workplace. It was thus reasonable for the employees to contact the Sheriff's Office and kindly ask her to leave the premises.

Lieutenant Maertz' discussion with the Plaintiff, where she asked the Plaintiff to leave resulted in no arrest. The Plaintiff received no citation. In fact, Lieutenant Maertz did not even require the Plaintiff to provide her name. Lieutenant Maertz professionally and politely informed the Plaintiff that the

12

employees of the Utility wanted her to leave. Under these circumstances, Lieutenant Maertz' conduct was reasonable, and she is entitled to qualified immunity under the circumstances as the law was not clearly established that she could not issue a warning to someone filming the interior and exterior of a public building disturbing its employees.

## Local Rule 3.01(g) Certification

The undersigned counsel, David Jadon, certifies that he had a conversation with the Plaintiff telephonically on March 25, 2024, wherein the Plaintiff indicated she opposed this motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25TH day of March, 2024, a true copy hereof has been electronically filed with the Clerk of the Court using the CM/ECF system and by email, by First-Class Mail and by Certified Mail to Plaintiff, Lana Patrick, 9378 Arlington Expressway, PMB 204, Jacksonville, Florida 32225.

/s/ Bruce R. Bogan
Bruce R. Bogan, Esquire
Fla. Bar No. 599565
Gary M. Glassman, Esquire
Fla. Bar No. 0825786
David R. Jadon, Esquire
Fla. Bar No. 1010249
Hilyard, Bogan & Palmer, P.A.
Post Office Box 4973
Orlando, FL 32802-4973

Telephone: 407-425-4251  
Facsimile:  407-841-8431  
Email: [bbogan@hilyardlawfirm.com](bbogan@hilyardlawfirm.com)  
      [gary@hilyardlawfirm.com](gary@hilyardlawfirm.com)  
      [djadon@hilyardlawfirm.com](djadon@hilyardlawfirm.com)  
Attorneys for Defendant Lt. Maertz