UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

La a Pa c P S

Civil Case No. 3:24-cv-197-WWB-MCR

Plaintiff,

vs.

LT MAERTZ CCSO
JOHN/JANE DOE CCUA

Defendant

## PLAINTIFFS' RESPONSE TO DEFENDANT JOHN/JANE DOE MOTION TO DISMISS

COME NOW, Plaintiff Lana Patrick, by and through herself as Pro Se, to respond to defendant John/Jane Doe motion to dismiss. This case should be an easy one to decide as there is a video record of the incident so no facts are in dispute.

## GROUNDS FOR DENYING MOTION TO DISMISS

1. My complaint does contain a claim for which relief can be granted.

2. A government agent can not escape liability by refusing to provide their name, I will be happy to amend the complaint with the agents name who allowed the trespass as soon as they provide it.

3. It is well established that we can record anywhere the general public is allowed where there is no expectation of privacy.

# I. A PROPER CLAIM

(1) Everyone knows that recording is a protected part of the speech process, although not expressive in nature by itself, it is protected as part of the speech process.

> *The act of making an audio or audio visual recording is necessarily included within the First Amendment's guarantee of speech and press rights as a corollary of the right to disseminate the resulting recording. The right to publish or broadcast an audio or audio visual recording would be insecure, or largely ineffective, if the antecedent act of making the recording is wholly unprotected,*
>
> *Am. Civil Liberties Union of IL v. Alvarez, No. 11-1286 (7th Cir. 2012)*

(2) The defendants adversely affected my activity by removing me from an area I was legally allowed to be in.

(3) There is ample evidence on video that their conduct was directly connected to my non expressive speech activity.

I want to thank the defense for bringing up the Richardson case, it is a great universal truth that we learn something everyday. What I learned from that case is while it's impermissible to use a volumous term like "guard" when discussing a prison, it is permisable to do so if the description is so specific as to be "at the very worst, surplusage." Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992).

I know that my description of the agent who issued the trespass is specific enough because Florida trespassing statute only allows the owner/lessee or a person authorized by the owner/lessee. Since the government is the owner/lessee they authorize a person to be the agent in charge, usually a building manage or administrator in a public facility. I also realize that the defendant LT Maertz would have verified that the person telling her to trespass me was in fact the agent/manager in charge of the building as state law requires. I have asked many times for the agents name and have been refused. Government agents can not escape libility by refusing to identify themselves.

The defendants are listed on both claims because they both violated those stated claims, the trespass was performed by both parties as required by law, and they both did it because of me exercising my right to free press. This really cant be that confusing, unless the defendant LT Maertz is asserting that she trespassed me without authorization from the buildings agent. It only stands to reason that they are both guilty of trespassing me from public property for simply exercising my rights.

## III QUALIFIED IMMUNITY

Even though the doctrine of qualified immunity was built upon unlawfull grounds because of the left out "notwithstanding clause" when the statute was codified, I shall address it as if it was still considered legitimate.

1. I think all parties concerned can agree that the right to free press is a constitutional right.

2. One would also imagine that a right that has been in existance for over 200 years would be "well established", but lets see what this right is about.

The defendant errors in thinking that I need an 11th circuit case or SCOTUS case saying I have a right to record public officials. The right itself is the precedent, the right to free press has and will always be the right to record our public officials as seen through the intent of our founders. I need case law saying I can record my public officials as much as I need case law saying that troops can not be quartered in my home.

> *The last right we shall mention, regards the freedom of the press. The importance of this consists, besides the advancement of truth, science, morality, and arts in general, in its diffusion of liberal sentiments on the administration of Government, its ready communication of thoughts between subjects, and its consequential promotion of union among them, whereby oppressive officers are shamed or intimidated, into more honourable and just modes of conducting affairs.*
> *Congress 1774 letter to inhabitants of Quebec*

We can see from the quote that public shaming of our officials into more honourable ways of conducting affairs was part of the intent of that right. The only way to bring that about is to record our officials actions and bring them to the bar of public opinion.

> *But in a constitutional point of view its chief importance is , that it enables the citizen to bring any person in authority , any public corporation or agency , or even the government in all its departments , to the bar of public opinion , and to compel him or them to submit to an examination and criticism of conduct , measures , and purposes in the face of the world , with a view to the correction or prevention of evils ; and also to subject those who seek public positions to a like scrutiny for a like purpose .*
> *Thomas Cooleys General Principals of Constitutional Law 1898 Page 301*

(b) As I noted above, we clearly have a well established right to film our government agents. Alas where can we film them from? Are we only allowed to film them walking from their cars into our public buildings? The defense would have you believe so, but the cases shown below prove that our right of access to information is equal to that of the public.

*As the Supreme Court has observed, "the First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw." First Nat'l Bank v. Bellotti, 435 U.S. 765, 783, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978); see also Stanley v. Georgia, 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) ("It is ... well established that the Constitution protects the right to receive information and ideas."). An important corollary to this interest in protecting the stock of public information is that "[t]here is an undoubted right to gather news 'from any source by means within the law.'" Houchins v. KQED, Inc., 438 U.S. 1, 11, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978) (quoting Branzburg v. Hayes, 408 U.S. 665, 681–82, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)).*

*The filming of government officials engaged in their duties in a public place, including police officers performing their responsibilities, fits comfortably within these principles. Gathering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting "the free discussion of governmental affairs." Mills v. Alabama, 384 U.S. 214, 218, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966). Moreover, as the Court has noted, "[f]reedom of expression has particular significance with respect to government because '[i]t is here that the state has a special incentive to repress opposition and often wields a more effective power of suppression.'" First Nat'l Bank, 435 U.S. at 777 n. 11, 98 S.Ct. 1407 (alteration in original) (quoting Thomas Emerson, Toward a General Theory of the First Amendment 9 (1966)). This is particularly true of law enforcement officials, who are granted substantial discretion that may be misused to deprive individuals of their liberties. Cf. Gentile v. State Bar of Nev., 501 U.S. 1030, 1035–36, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991) (observing that "[t]he public has an interest in [the] responsible exercise" of the discretion granted police and prosecutors). Ensuring the public's right to gather information about their officials not only aids in the uncovering of abuses, see id. at 1034–35, 111 S.Ct. 2720 (recognizing a core First Amendment interest in "the dissemination of information relating to alleged governmental misconduct"), but also may have a salutary effect on the functioning of government more generally, see Press–Enter. Co. v. Superior Court, 478 U.S. 1, 8, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (noting that "many governmental processes operate best under public scrutiny").*

*Glik v. Cunniffe, 655 F.3d 78, 82-83 (1st Cir. 2011)*

> *In line with these principles, we have previously recognized that the videotaping of public officials is an exercise of First Amendment liberties. In Iacobucci v. Boulter, 193 F.3d 14 (1st Cir.1999), a local journalist brought a § 1983 claim arising from his arrest in the course of filming officials in the hallway outside a public meeting of a historic district commission. The commissioners had objected to the plaintiff's filming. Id. at 18. When the plaintiff refused to desist, a police officer on the scene arrested him for disorderly conduct. Id. The charges were later dismissed. Id. Although the plaintiff's subsequent § 1983 suit against the arresting police officer was grounded largely in the Fourth Amendment and did not include a First Amendment claim, we explicitly noted, in rejecting the officer's appeal from a denial of qualified immunity, that because the plaintiff's journalistic activities "were peaceful, not performed in derogation of any law, and done in the exercise of his First Amendment rights, [the officer] lacked the authority to stop them." Id. at 25 (emphasis added).*

Glik v. Cunniffe, 655 F.3d 78, 83 (1st Cir. 2011)

> *The First Amendment right to gather news is, as the Court has often noted, not one that inures solely to the benefit of the news media; rather, the public's right of access to information is coextensive with that of the press. Houchins, 438 U.S. at 16, 98 S.Ct. 2588 (Stewart, J., concurring) (noting that the Constitution "assure[s] the public and the press equal access once government has opened its doors");*
>
> *Branzburg, 408 U.S. at 684, 92 S.Ct. 2646 ("[T]he First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally.").*

Glik v. Cunniffe, 655 F.3d 78, 83-84 (1st Cir. 2011)

As we can see from the above cases, it is well established that the press and public have the same right of access in order to gather information. In fact, in the case the defendant cites Sheets v Punta Gorda, it specifically states he had a right to film in the building and no employee could stop him.

> *Nor can a person prevent recording of City Hall's public areas. So while the Ordinance does not delineate standards to guide withholding consent, any vested discretion is not unbridled or unfettered; rather, it is personal and limited to each individual. Here for instance, Sheets recorded the lobby of City Hall before encountering anyone. Under the Ordinance, no City employee could prevent him from doing that.*
> Sheets v. City of Punta Gorda, 415 F. Supp. 3d 1115, 1125 (M.D. Fla. 2019)

(c) The defendant then goes on to say that speech is regulated on public property by the forum doctrine, and they are correct. Expressive acts have been regulated by the forum doctrine, however non-expressive acts have not and are not regulated by the forum doctrine. This case deals with newsgathering not free speech. Newsgathering is regulated by the right of access to information. If the public is allowed in an area, then the press is allowed. The legal standard is that the public and press have the same right of access, not that they have the same right "except in limited public forums".

> *This helps explain why these cases make no effort to determine whether the location of the recording is a public forum: Because prohibiting the recording of a public official performing a public duty on public property is unreasonable, the specific nature of the public property is irrelevant.*
> *Price V Garland D.C. appeals court No. 21-5073*

> *"to record what there is a right for the eye to see and the ear to hear . . . lays aside subjective impressions for objective facts."*
> *Thus, "to record is to see and hear more accurately."*
> *Fields, 862 F.3d at 359"*

> *Gathering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting "the free discussion of governmental affairs." .*
> *(quoting Mills v. Alabama, 384 U.S. 214, 218 (1966)).*

(d) Just because people are busy bodies and want to know and control what other folks are doing, in no way makes me recording into a disturbance. Each office is able to close its blinds. To leave the blinds open and then complain that the world is looking in is no basis for accusations that I am causing a disturbance.

As for the conspiracy claim, it is more then evident that in order to trespass someone from public property you need a meeting of the minds of the building agent and of the law enforcement officer conducting the trespass at the building agents request.

I pray that for all the reasons listed herein that this court deny's the defendants motion to dismiss.

_____
Lana Patrick Pro Se
9378 Arlington EXPY
PMB 204
Jacksonville FL 32225
thejtownpress@gmail.com
904-445-1589

Lana Patrick Pro Se
9378 Arlington EXPY
PMB 204
Jacksonville FL 32225
thejtownpress@gmail.com
904-445-1589

## **CERTIFICATE OF SERVICE**

I hearby certify that on this the 8th day of April 2024, I have mailed copies of this response

to the Clerk of the Court and counsel for the defendant.

**Austin Sherman
CARR ALLISON
truist tower
200 w Forsyth St suite 600
Jacksonville FL 32202**

/s/
Pro Se