**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

LANA PATRICK,

                        Plaintiff,

vs.                                                  CASE NO.:  3:24-cv-197-WWB-MCR

MAERTZ and JOHN/JANE DOE,

                        Defendants.

_____

**PLAINTIFF'S RESPONSE TO DEFENDANT
JOHN/JANE DOE'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

     Comes now the Plaintiff  Lana Patrick pro se to respond to defendants motion to dismiss my second amended complaint. For the reasons stated below I humbly ask the court to deny their motion so that justice may preveil.

_____

The facts of this case are not many and not hard to understand, in fact when discussing defendants part, its as simple as.

1. I had a right to gather content on public employees conducting public business in an area that is open to the public.

2. Without me creating some kind of disturbance or impeding of business they have no right to ask me to leave and surely no right to force me to leave.

There is a disturbing trend of public employees thinking they can remove citizens from publicly accessable areas of public buildings for gathering content on their activities. Such is the issue in this case, public employees called the police to have me removed for doing nothing more than exercising my right to gather content on their activities.

While the defense tries to imply I have included no facts, I included a timeline and incorporated the video into the complaint so all the facts would be able to be seen by all. The facts can not be disputed as there is video evidence of the whole interaction, and fifty thousand facts are not need to explain a claim as simple as this one is.

Its as basic as 1. I had a right to be there, 2. They had no right to remove me. How that can be confusing or vague is confusing to me. It seems simple enough, not being a lawyer I would assume a defense would be to show they did have a right to remove a citizen for any reason they want at any time they want.

Defense continues to bring up the fictitious party argument when in fact the cases they bring are miles apart. Take the New v. Sports Rec., Inc., 114 F.3d 1092, 1094 n. 1 (11th Cir. 1997) case. The differences are huge, first and foremost New wasn't asserting a claim against a person who directly violated her rights as the case before us now. Also to note is the fact that this is an easy to remedy fix in discovery.

Florida statute makes clear that only an owner/agent or a person authorized by them can revoke the invitation.

> *810.08   Trespass in structure or conveyance.—*
> *(1)   Whoever, without being authorized, licensed, or invited,*
> *willfully enters or remains in any structure or conveyance, or,*
> *having been authorized, licensed, or invited, is warned by the*
> *owner or lessee of the premises, or by a **person** authorized by the*
> *owner or lessee, to depart and refuses to do so, commits the*
> *offense of trespass in a structure or conveyance.*

Now as the statute clearly shows, there was **one person** in the building who could of been authorized to trespass me that day. Not multiple persons, nor is it believeable that CCUA is clueless to who that one person may be. Since they are not willing to stand behind what they consider to be a lawfull removal, then discovery will allow the other defendant to tell us who told them to trespass me. Chances are we will find that it was not in fact a person authorized, and in finishing this topic I will again quote the defenses case they used in their first motion to dismiss.

>*If a John Doe cannot be identified sufficiently in order to summon that individual to appear, dismissal of that Defendant from this action will be warranted. Cf. Dean v. Barber, 951 F.2d 1210, 1215–16 (11th Cir. 1992) (finding plaintiff's description of "Chief Deputy of the Jefferson County Jail John Doe" sufficient because the proposed defendant existed and plaintiff adequately described the person to be sued so that the person could be identified for service). PAULCIN v. McNEIL  Case No: 3:08cv378/RV/EMT Doc #20  2/9/09*

Such is the facts in this case, we know the proposed defendant exists, and that I described the person as the only person in the building who could lawfully revoke my invitation.

## I. A PROPER CLAIM

(1) Everyone knows that gathering content is a protected part of the speech process, although not expressive in nature by itself, it is protected as part of the speech process.

>*The act of making an audio or audio visual recording is necessarily included within the First Amendment's guarantee of speech and press rights as a corollary of the right to disseminate the resulting recording. The right to publish or broadcast an audio or audio visual recording would be insecure, or largely ineffective, if the antecedent act of making the recording is wholly unpro tected, Am. Civil Liberties Union of IL v. Alvarez, No. 11-1286 (7th Cir. 2012)*

(2) The defendants adversely affected my activity by removing me from an area I was legally allowed to be in.

(3) There is ample evidence on video that their conduct was directly connected to my non expressive speech activity

## II. SERVICE WAS PROPER

The service was proper, as noted, they refuse to give me the name of the person who unlawfully trespassed me. The only option left was to serve the papers at the place of business, which is allowed because its how I serve all government employees as their home address is exempt from disclosure. Even providing I had the name of the defendant, I still would of had to serve them at their place of business.

## III. FACTUAL CLAIMS

While the defense asserts that I have provided no facts, the record shows that I have. First and foremost the facts again are simple, I was in a place I was legally allowed to be in. Defendant upset about my recording called the police to have me removed. All of these facts were submitted in a timeline form and with video evidenced attached.

## IV. SEPARATE CLAIMS

The claims have been broken down by numbers and names, it is more than clear what each defendant did. I only included facts in my complaint, while the defense would like us to believe that me stating that I have a right to be in publicly

accessable area when open to the public is a legal conclusion, its actually a fact.

Both the 11th circuit in Catron v. St. Pete

> Plaintiffs' **factual allegations** that the City
> prohibited them from being in city parks (in
> general, and in Williams Park specifically),
> on public sidewalks, andat bus shelters
> located on public sidewalks lead us to
> conclude that "there is more than a sheer
> possibility" that Plaintiffs have been
> deprived of a constitutionally-protected
> liberty interest.  Cf. Iqbal, 129 S. Ct. at 1949.
> Catron, et al. v. City of St. Petersburg, FL,
> No. 10-12032 (11th Cir. 2011)

And the Supreme Court in Chicago v Morales

> On the other hand, as the United States
> recognizes, the freedom to loiter for innocent
> purposes is part of the "liberty" protected by
> the Due Process Clause of the Fourteenth
> Amendment. 19 We have expressly identified
> this "right to remove from one place to
> another according to inclination" as "an
> attribute of personal liberty" protected by
> the Constitution. Williams v. Fears, 179 U.
> S. 270, 274 (1900); see also Papachristou v.
> Jacksonville, 405 U. S. 156, 164 (1972).20
>
> 19 See Brief for United States as Amicus
> Curiae 23: "We do not doubt that, under the
> Due Process Clause, individuals in this
> country have significant liberty interests in
> standing on sidewalks **and in other public
> places**, and in traveling, moving, and
> associating with others."
> Chicago v. Morales, 527 U.S. 41,53 (1999)

6

As constituting members of the body, we have a constitutionally protected

liberty interest in public property that can not be revoked by feelings of uncomfort.

> *But, in our system, undifferentiated fear or*
> *apprehension of disturbance is not enough to*
> *overcome the right to freedom of expression.*
> *Tinker v. Des Moines Independent Community*
> *School District, 393 U.S. 503,508 (1969)*

Its clear, both in the complaint and attached video that I was in publicly accessable

areas, generally open to the public, at a time usual for the public to be there. I was engaged in

constitutionally protected act of gathering content to disseminate, and they were uncomfortable

with it. They then called the police to remove me, not because I was causing a disturbance or

impedeing business, but because they were not comfortable with me exercising my rights.

## V. QUAILIFIED IMMUNITY

1. I think all parties concerned can agree that the right to free press is a
constitutional right.

2. One would also imagine that a right that has been in existance for over 200
years would be "well established", but lets see what this right is about.

> *But in a constitutional point of view its chief importance is ,*
> *that it enables the citizen to bring any person in authority , any*
> *public corporation or agency , or even the government in all its*
> *departments , to the bar of public opinion , **and to compel him***
> ***or them to submit to an examination and criticism of conduct** ,*
> *measures , and purposes in the face of the world , with a view to*
> *the correction or prevention of evils ; and also to subject those*
> *who seek public positions to a like scrutiny for a like purpose .*
>
> *Thomas Cooleys General Principals of Constitutional Law*
> *1898  Page 301*

## VI. PUBLIC FORUM DOCTRINE

For some reason the defense seems to believe that if an area might be considered a limited or non public forum then we lose any rights we might have. I want to take the time to address this issue as it is rampant in government circles. The forum doctrine isn't a restriction in and of itself, it's a test applied by the courts (not the government) to figure out what restrictions are constitutional. It deals with expressive acts only, and does not touch upon non-expressive elements of the speech process. No one has ever been trespassed from a public place, be it a park or city hall, for writing the lyrics of a song in a notebook, or for writing a chapter or part of a novel while waiting in line to pay your water bill at city hall.

> *An important corollary to this interest in protecting the stock of public information is that **"[t]here is an undoubted right to gather news 'from any source by means within the law.' "** Houchins v. KQED, Inc., 438 U.S. 1, 11, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978) (quoting Branzburg v. Hayes, 408 U.S. 665, 681–82, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)).*

> *The filming of **government officials** engaged in their duties in a public place, including police officers performing their responsibilities, fits comfortably within these principles. Gathering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting "the free discussion of governmental affairs." Mills v. Alabama, 384 U.S. 214, 218, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966).*

By any means within the law, so if for example I was legally allowed to be present in a public area, I would have an undoubted right to gather news that couldnt be infringed by say government employees who felt uncomfortable.

8

*Moreover, as the Court has noted, "[f]reedom of expression has particular significance with respect to government because '[i]t is here that the state has a special incentive to repress opposition and often wields a more effective power of suppression.' " First Nat'l Bank, 435 U.S. at 777 n. 11, 98 S.Ct. 1407 (alteration in original) (quoting Thomas Emerson, Toward a General Theory of the First Amendment 9 (1966)).*

*This is particularly true of law enforcement officials, who are granted substantial discretion that may be misused to deprive individuals of their liberties. Cf. Gentile v. State Bar of Nev., 501 U.S. 1030, 1035–36, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991) (observing that "[t]he public has an interest in [the] responsible exercise" of the discretion granted police and prosecutors). Ensuring the public's right to gather information about their officials not only aids in the uncovering of abuses, see id. at 1034–35, 111 S.Ct. 2720 (recognizing a core First Amendment interest in "the dissemination of information relating to alleged governmental misconduct"), but also may have a salutary effect on the functioning of government more generally, see Press Enter. Co. v. Superior Court, 478 U.S. 1, 8, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (noting that "many governmental processes operate best under public scrutiny"). Glik v. Cunniffe, 655 F.3d 78, 82-83 (1st Cir. 2011)*

***In line with these principles, we have previously recognized that the videotaping of public officials is an exercise of First Amendment liberties.*** *In Iacobucci v. Boulter,193 F.3d 14 (1st Cir.1999), a local journalist brought a § 1983 claim arising from his arrest in the course of filming officials in the hallway outside a public meeting of a historic district commission. The commissioners had objected to the plaintiff's filming. Id. at 18. When the plaintiff refused to desist, a police officer on the scene arrested him for disorderly conduct. Id. The charges were later dismissed. Id. Although the plaintiff's subsequent § 1983 suit against the arresting police officer was grounded largely in the Fourth Amendment and did not include a First Amendment claim, we explicitly noted, in rejecting the officer's appeal from a denial of qualified immunity, that because the plaintiff's journalistic activities "were peaceful, not performed in derogation of any law, and done in the exercise of his First Amendment rights, [the officer] lacked the authority to stop them." Id. at 25 (emphasis added).*
*Glik v. Cunniffe, 655 F.3d 78, 83 (1st Cir. 2011)*

The Sheets case highlights my point that a limited public forum does not mean you can not record. The restriction in the Sheets case was recording people without their consent. As such, even with both parties agreeing that it was a limited public forum the court stated that no one could of stopped Sheets from recording in the public areas, again because there was no restriction against simply recording the public areas..

> ***Nor can a person prevent recording of City Hall's public areas.*** *So while the Ordinance does not delineate standards to guide withholding consent, any vested discretion is not unbridled or unfettered; rather, it is personal and limited to each individual. Here for instance, Sheets recorded the lobby of City Hall before encountering anyone. Under the Ordinance, no City employee could prevent him from doing that.*
>
> *Sheets v. City of Punta Gorda, 415 F. Supp. 3d 1115, 1125 (M.D. Fla. 2019)*

In closing I humbly ask the court to deny the defendants motion to dismiss my second amended complaint so we can proceed to discovery and hopefully to see justice.

Respectfully submitted,

Lana Patrick Pro Se
9378 Arlington Expy
PMB 204
Jacksonville, FL 32225
thejtownpress@gmail.com
904-524-6030

10

## <u>CERTIFICATE OF SERVICE</u>

I hearby certify that on this the 9th day of July 2025, I have submitted a copy of this

response to the Clerk of the Court and mailed a copy for the counsel for the defendant.

Austin C. Sherman (Lead Attorney)
CARR ALLISON
Truist Tower
200 W. Forsyth Street, Suite 600
Jacksonville, Florida 32202

Lana Patrick Pro Se
9378 Arlington Expy
PMB 204
Jacksonville, FL 32225
thejtownpress@gmail.com
904-524-6030